



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. W. Cox
State Health Officer
Austin, Texas

Dear Sir:

Opinion No. O-1138
Re: Interpretation of House
Bill No. 142, Acts of the
46th Legislature.

We acknowledge receipt of your letter of July
18, 1939, in which you request the opinion of this Depart-
ment on the following four questions:

"1. It is not clear to me how persons en-
gaged in fishing on or off the Coast of the
Gulf of Mexico can display for public inspec-
tion on the shores of the Gulf of Mexico, or
on the waters of the Gulf of Mexico, the certi-
ficates required under this Act.

"2. Section 2 is not clear because it re-
quires a complete valid health certificate is-
sued for each member of the family or household
regardless of whether each member of the house-
hold handles candies or manufactures sweets or
not.

"3. In view of this opinion, (Opinion No.
O-813 by this Department) does House Bill No.
142 prescribe a laboratory analysis, or any other
particular method or methods to be used by the
physician in determining the existence of such
diseases, or does House Bill No. 142 mean the
determination of the method to be used should be
left to the ' conscientious discretion of the
physician?'

"4. Are there any sections or provisions
in this Bill unconstitutional?  If so please
advise."

NO COMMUNICATION IS TO BE CONSTRUED ... NION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Geo. W. Cox, Page 2

Your first question embraces a fact situation which this Department cannot undertake to pass upon. The first sentence of Section 3 of House Bill No. 142 reads as follows:

"All health certificates called for by this Act shall be displayed for public inspection at the place where the person named thereon is employed, and shall not be removed from such place during the continuance of such employment except by a public health officer, his duly appointed agent, or upon valid court order."

This section also authorizes the public health department and local lawmaking bodies to establish such further rules, regulations and ordinances as they may deem essential to carry out the intentions of the Act. The clear intention of the Legislature is to provide for all persons possessing health certificates under the Act to display the same at the place where they are employed. This does not mean that the employee must carry the certificate on his person at all times, nor that he must display it at any place other than the place of his employment. The mode of displaying the certificate is an incidental question of fact and authorities directly concerned with public health are given ample authority to enact clarifying rules and regulations, if they are considered necessary.

Section 2 of House Bill No. 142 provides that it shall be unlawful for any manufacturer or vendor of candies or manufactured sweets to knowingly consign, sell or furnish such products to any person or persons for the purpose of resale from a private residence, unless such person or persons display a complete valid health certificate issued for each member of the family or household from which products are to be resold. The only offense outlined by this section is the act of the manufacturer of the product in knowingly consigning, selling or furnishing candies or manufactured sweets to a person who has not met the requirements therein set out. The fact that the person to whom the product has been sold has not met such requirements is not an offense under Section 2. In answer to your second question we advise you that Section 2 does require a health certificate for each member

Honorable Geo. N. Cox, Page 3

of the family or household, regardless of whether or not they have anything to do with the actual resale of the candy.

In answer to your fourth question, we advise you that we find no section or provision which renders the bill unconstitutional, or which in itself contravenes any provision of the Constitution. The protection of public health is a subject which properly falls within the exercise of the police power of the State, and it is the duty of this Department to resolve every reasonable doubt in favor of the validity of such legislation, if such doubt exists. Due to the fact that this Act is new legislation, we do not intend to express, at this time, any opinion on means and methods employed in the enforcement of its provisions, insofar as the subject of constitutionality is concerned.

Immediately preceding your third question the following paragraph appears in your letter:

"I quote from your opinion No. O-213 under date of January 27, 1939 as follows: 'We express no opinion herein that a laboratory analysis is or is not necessary to determine the existence of infectious or communicable diseases. We hold merely that the Legislature has not undertaken to prescribe a laboratory analysis or any other particular method or methods to be used by the physician in determining the existence of such diseases, but leaves the determination of the methods to be used to the conscientious discretion of the physician."

The opinion to which you refer does not necessarily have any bearing on the question presented, since it was rendered on a statute which differs greatly in terminology from the one now under scrutiny. It does apply insofar as it expresses an unwillingness on the part of this Department to dictate methods of practice to the medical profession.

From this paragraph and your letter as a whole, however, we gather the impression that you are principally interested in determining whether or not the provisions of House Bill No. 142 require a physician to base his opinion on a laboratory analysis in ascertaining freedom from venereal disease. Further, it appears that the controversy as to whether or not blood tests are necessary principally arises in the case of examinations for venereal disease.

Honorable Geo. W. Cox, Page 4

Article 4445 of the Revised Civil Statutes of Texas defines venereal diseases and declares them to be contagious, infectious, communicable and dangerous to public health. By virtue of this legislative declaration, House Bill No. 142 and any other legislative act which treats the subject of infectious, communicable and contagious diseases, does apply to venereal diseases.

We quote the following sections from House Bill No. 142 for the purpose of ascertaining the intention of Legislature from the language therein employed:

"Section 1. No person, firm, corporation, common carrier or association operating, managing, or conducting any hotel or any other public sleeping or eating place, or any place or vehicle where food or drink or containers therefor, of any kind, is manufactured, transferred, prepared, stored, packed, served, sold, or otherwise handled in this State, or any manufacturer or vendor of candies or manufactured sweets, shall work, employ, or keep in their employ, in on, or about any said place or vehicle, or have delivered any article therefrom, any person infected with any transmissible condition of any infectious or contagious disease, or work, or employ any person to work in, on or about said place, or to deliver any article therefrom, who at the time of his or her employment, failed to deliver to the employer or his agent, a certificate signed by a legally licensed physician, residing in the county where said person is to be employed, or is employed, attesting the fact that the bearer had been actually and thoroughly examined by such physician within a week prior to the time of such employment, and that such examination disclosed the fact that such person to be employed was free from any transmissible condition of any infectious or contagious disease; or fail to institute and have made, at intervals of time not exceeding six months, actual and thorough examinations, essential to the findings of freedom from communicable and infectious diseases, of all such employees, by a legally licensed physician residing in the county where said person is employed, and secure in evidence thereof a certificate signed by such physician stating that

Honorable Geo. W. Cox, Page 5

such examination had been made of such person, disclosing the fact that he or she was free from any transmissible condition of any communicable and infectious diseases." (Underscoring ours)

"Section 3. Halth Certificate--Displayed. All health certificates called for by this Act shall be displayed for public inspection at the place where the person named thereon is employed, and shall not be removed from such place during the continuance of such employment except by a public health officer, his duly appointed agent, or upon valid court order. <u>All such certificates shall bear the employee's signature, the name of the physicians executing examinations and texts</u>, and shall describe the color of eyes, and hair, height, weight, race, sex, age, and date of issuance, and shall be valid for six months only. Public health departments, and local lawmaking bodies, are hereby authorized to establish such further rules, regulations and ordinances as they may deem essential to the execution of the intentions of this Act; providing, however, that all conditions of this Act shall be requisite to all such regulations and ordinances, except, that the said authorities may adopt a plan for the registration of the physicians' certificates required by this Act and in lieu thereof issue a registration card to show that the person named thereon has complied with all of the provisions of this Act; providing further that the said registration card must bear the signature of the person named thereon and shall be displayed for public inspection at the place where such a person is employed." (Underscoring ours)

"Section 4. Failure to Comply With Act. The failure of any person, firm, corporation, common carrier or association engaged in any of the businesses described in this Act, to display at the place where any of the operations of such businesses are being conducted, a valid health or registration certificate, as required by this Act, for each person employed in, on, or about such place, shall be prima facie evidence that the said person, firm, corporation, common carrier or association, in violation of requirements called for by this Act, failed to require the exhibition of the pre-employment

Honorable Geo. W. Cox, Page 6

health certificate, of such person and failed to
institute and have made of such person, actual
and thorough examinations necessary to the find-
ings of freedom from communicable diseases at,
intervals of time not exceeding six months."
(Underscoring ours)

Merriam's Second Edition of Webster's Unabridged
Dictionary contains the following definitions of words appear-
ing in House Bill No. 142:

Execute:  "To follow out or through to the end;
          to carry out or into complete effect"

Thorough: "So complete as to leave nothing un-
          affected or wanted; painstakingly ex-
          act or careful about details"

Examine:  "To test by an appropriate method; to
          inspect carefully with a view to dis-
          cover the real character or state of"

Essential:"Being what is in the most perfect de-
          gree; indispensable; important in the
          highest degree"

The provisions of House Bill No. 142 demand "actual
and thorough examinations essential to the findings of free-
dom from infectious and communicable diseases." By the use
of these terms it is obvious that the Legislature intends to
require more than a mere questioning or casual examination.
What type of examination is essential to the findings of
freedom from infectious and communicable diseases could bet-
ter be determined by a qualified physician, and this Depart-
ment does not desire to render any opinion which would in-
vade the field properly and capably occupied by the medical
profession. It is with that thought in mind that we have
examined several bulletins distributed by the Texas State
Department of Health in an effort to ascertain what proce-
dure the medical profession and your Department consider
necessary to establish the finding that a person is free
from infectious and communicable diseases, with particular
reference to syphilis and other venereal diseases. From
our examination of this material we find that both your De-
partment and the medical profession generally seem to con-
sider a blood test essential to any examination which pur-
ports to establish freedom from syphilis.

You will note that the Legislature in Section 3 of House Bill No. 142 has required that all certificates given as evidence that proper examinations have been made "shall bear the names of the physicians executing the examinations, and tests." The language here used provokes the thought that the Legislature contemplated that physicians should resort to means other than a mere routine examination. Consequently, it becomes apparent that whatever tests are generally required to show freedom from such diseases should be resorted to by physicians issuing the certificates. If there are available means other than the blood tests which are acceptable methods of determining freedom from such diseases it would of course be in order for examiners to use such procedure. In short, the Legislature has required in House Bill No. 142 that the physician who issues the health certificate provided for therein shall conduct an actual and thorough examination, which is necessary or essential to the findings of freedom from communicable disease. The medical profession alone occupies the field of knowledge and science which determines what examination or tests are necessary or essential to such findings. If it is true that in order to discover syphilis a physical examination plus a blood test is required, then physicians should require blood tests of all persons examined under the authority of House Bill No. 142. If the Wassermann Test is necessary then such test should be administered. This question, however, cannot be passed upon by this Department. By failing to specify the type of test which should be employed, the Legislature has left the physician unhampered and free to resort to the latest and most modern precautions acceptable to scientific effort to check the spread of disease. Great dependence has and properly should be placed upon the integrity of an honorable profession in assuming it will avail itself of every means now at its command, or made available in the future, in the ever constant battle to stifle the enemies of mankind's health and security.

Our field of knowledge is not of sufficient breadth to justify any attempt to adequately discuss this problem. We have used the disease of syphilis as an example. As to what means or tests are necessary to establish a finding of freedom from this and other diseases we

Honorable Geo. W. Cox, Page 8

frankly admit basic ignorance. We are forced to resort to reliable authority foreign to the pursuit of the duties imposed upon and executed by this Division of State Government. Neither are we capable, on the basis of our own qualifications, of classifying diseases as those which are infectious, contagious, and communicable, and those which are not.

If this Department undertook to set out in this opinion the examination and the type of tests to be employed under House Bill No. 142, it would simply be a reiteration of opinions and bulletins issued and circulated by your Department and by other competent medical authorities. In view of the fact that your Department occupies this field of specialized knowledge we consider it unnecessary and improper for us to render an opinion which reaches the presumptuous state wherein the Attorney General undertakes to prescribe methods which a physician must pursue in the ethical practice of his profession, and in following the plain mandate of the legislature.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Ross Carlton
Assistant

RC:LM

APPROVED AUG 11, 1939

(Signed) Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved
Opinion Committee
By R.W.F., Chairman